**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

In re.: Search of

    KindHearts for Charitable                     Case No. 3:06MJ7019
    Humanitarian Development,

On February 19, 2006, the Office of Foreign Assets Control [OFAC] of the United States Department of the Treasury froze the assets of a Toledo, Ohio, charity, KindHearts for Charitable Humanitarian Development [KindHearts]. OFAC based its action on Executive Order 13,224 and its investigation into whether KindHearts should be designated as a "specially designated global terrorist." OFAC apparently suspects that KindHearts raises funds for, and thereby provides support to one or more overseas terrorist organizations.

On that same day federal agents executed a search warrant at the headquarters of KindHearts and the residence of its president, Khaled Smali. According to the government, the agents seized 150 boxes of documents, paper files, computer hard drives, videotapes and other media.

On April 9, 2006, on *ex parte* application by the government, the United States Magistrate Judge signed a Protective Order, which restricted the circumstances under which counsel for KindHearts could have access to copies of the seized materials. That order provided:

-     Only counsel and their staff may view the materials; staff may do so under the direct supervision of counsel;

- Only one copy [in electronic format] of the materials to which counsel have access is available for review; counsel can make no copies of any of the materials, even for purposes of sharing amongst themselves;[1]

- Access to seized materials by KindHearts members and officers is permissible only on court order; their view is limited to "non-image data pertaining to the materials," and their viewing must occur "under the direct supervision and control of counsel."[2]

- Use of the materials is limited to counsel "solely and exclusively in connection with the OFAC designation proceedings and for no other purpose."

- The materials were "contraband" and are subject to "non-recoverable destruction" on "termination of this matter."

Counsel for KindHearts thereafter informally asked government counsel to agree to modifications of the order to enable all counsel to have unrestricted access to copies of all seized materials. They also asked to have the order changed to permit representatives of KindHearts also to have access to such copies. Rejecting those requests, the United States Attorney's Office stated that the materials were contraband, and indicated that mere possession of copies of the materials [at least by KindHearts' personnel] would be unlawful.[3]

---

[1] KindHearts counsel are located in Toledo and Washington, DC. One of its attorneys, Georgetown University law professor David Cole, is living in London, England, during the current [2008-09] academic year.

[2] KindHearts' counsel represents that KindHearts' officers are located in Ohio, California and Lebanon.

[3] The government's responses to the requests by KindHearts' counsel for alteration of the protective order also asserted that its operation was similar to that of a protective order that preserved trade secrets. The government no longer makes this inapposite assertion.

KindHearts instituted these proceedings two and a half years after the OFAC freeze and the agents' execution of the search warrant. In this suit, KindHearts challenges the government's "blacklisting" of the organization and freezing of its assets as violative of due process of law.

In the interim, and perhaps as a result of institution of this suit, the government asked the Magistrate Judge to amend the protective order. She has done so, and KindHearts counsel now have copies of the paper documents seized during execution of the search warrant. They do not have copies of electronically stored data and information on the computers seized during execution of the warrant.

In the nearly three years since the government's actions – which, presumably, have put and kept KindHearts out of operation – it has neither instituted criminal proceedings nor proceeded to formal designation of KindHearts as a "specially designated global terrorist organization."

Pending is KindHearts motion to vacate, or, in the alternative, modify the amended protective order. [Doc. 25]. KindHearts contends that, as presently in force, the amended protective order unlawfully:

1) Impairs and interferes with its right to use its own property, thereby violating its rights to due process of law under the Fifth Amendment;

2) Impairs and interferes its constitutional rights [presumably under the Fifth and Sixth Amendments] to be represented by counsel, and thus to defend itself against the government's past, present and possible future actions against it;

3) Deprives it of its right under Fed. R. Crim P. 41(g) to a return of its property; and

4) Impairs and interferes with its First Amendment rights of free speech and association.

3

In its response to the pending motion, the government asserts that "relaxation" of the protective order "is unwarranted and would risk compromise of the ongoing criminal probe." [Doc. 35, at 2]. It states that it sought the protective order "to prevent obstruction of justice; including improper influence of potential testimony, intimidation of witnesses, and the alteration, concealment, or destruction of evidence." [*Id*., at 4]. It also complains that KindHearts "refuses to focus its demand" and "fails to identify any particular document(s) – or categories of documents – that must be disseminated to any particular person who cannot travel to counsel's office." [*Id*., at 7].[4] The government also asserts that granting KindHearts' motion would neuter my power to enforce whatever restrictions I might include in any order I might sign. [*Id*., at 2].[5]

For the reasons that follow, I find KindHearts contentions to be well-taken, and the government's justifications unpersuasive. The motion to vacate shall be granted, subject to the government's ability to seek specific, individualized limitations on the basis of *bona fide* and substantial need and cause.[6]

## Discussion

The government claims that making copies of what it seized, and allowing more extensive access to such copies might compromise whatever investigation of KindHearts is continuing [and thus, implicitly, whatever prosecution might thereafter be forthcoming]. I cannot see – and the government hasn't shown me – how that is so: KindHearts isn't asking to have its property back.

---

[4] That contention has things upside-down. The government has the burden of showing that something should not be copied or, if copied, should be restricted as to access and dissemination.

[5] There is no merit to the suggestion, implicit in the government's contention that an order might be unenforceable. I am quite confident that I would not enter an order that I could not enforce.

[6] Production of copies of materials not yet provided to counsel shall begin forthwith, and not be delayed pending adjudication of any requests for limitations on access and dissemination.

4

It simply wants copies. The government can keep what it got and use it for whatever investigative purposes it wishes. That copies are made and given to counsel and KindHearts will have no conceivable effect on how, or how expeditiously and successfully three years on, it conducts its "ongoing investigation."

The contention, as advanced by the government, that it needs its protective order "to prevent obstruction of justice; including improper influence of potential testimony, intimidation of witnesses, and the alteration, concealment, or destruction of evidence," is hardly more persuasive.

The government has all the original materials; KindHearts isn't, as noted, asking for *those* back. As it just wants copies, it's very difficult to see how its having duplicates could lead to the "alteration, concealment, or destruction of evidence." Certainly the government hasn't told me how that might occur, much less occur successfully in the face of its retention of and ability to display the original in the face of an altered original.[7]

The government's other concerns – "improper influence of potential testimony, intimidation of witnesses" – though perhaps a bit more comprehensible in the abstract, do not, without more, justify its refusal to be more forthcoming with its production of copies of what it has seized.[8]

---

[7] For a current example of potential problems with using duplicates that vary from originals, *see* "Senate recount trial: Copies of ballots don't cut it," Minneapolis Star-Tribune, Jan. 27, 2009, http://www.startribune.com/politics/national/senate/38344479.html?elr=KArksUUUU; "Marks on copies of rejected absentee ballots derail Coleman lawsuit over Minn. Senate recount," *id.*, http://www.startribune.com/politics/national/senate/38326044.html?elr=KArksUUUU.

[8] For a while before KindHearts filed this suit the government asserted that the seized material was contraband, and therefore giving KindHearts copies of what the government seized would not be lawful. The government sensibly does not renew this contention in its opposition to the instant motion: while some or all of the materials might be *evidence*, that does not make them, or any part of them, *contraband*, the possession of which is *ipso facto* illegal. *See generally Warden v. Hayden*, 387 U.S. 294 (1967).

Applicable case law supports KindHearts' demand for release to it of copies of its seized documents. Thus, in *Premises Known as 225, 1468 and 1470 Statler Towers, 197 Delaware Ave.*, 787 F.2d 796, 798 (2d Cir. 1986), the Second Circuit stated, "the cases may imply that the government had the duty to furnish appellants with copies of the more important records in order to prevent major hardship during the time preceding the indictment."

District courts have expressly approved making of copies of business records. Thus, as one district court stated:

> It is the court's implicit duty to ameliorate . . . intrusions [into operations of a business whose records have been seized with a warrant] where possible. Absent some countervailing consideration, the owners are entitled to have access to their records for business purposes and *in preparation of their defense*.
> In contravention, the government offers only the contention that releasing copies of the documents "could very well impede the Grand Jury's investigation." No further explanation is offered, and without one the scales must tip in favor of the owners.
> Finally, the government states that it would be willing to provide copies of seized documents which do not pertain to the four businesses listed in the warrants, if the owners identify these items with specificity. This offer is of little assistance since it does not address the business documents sought by the owners.

*In re Search Warrants for 14 Straight Street, S.W., 439 Ionia, S.W. and 2026 Chicago Drive,* 117 F.R.D. 591, 596 (W.D.Mich. 1987) (emphasis supplied). *Accord*, *U.S. v. Hoskins,* 639 F. Supp. 512, 515 (W.D.N.Y. 1986) ("under some form of equitable jurisdiction, courts order that copies be made available" in lieu of a pre-indictment Rule 41(g) motion for return of property).

Appellate courts, including the Sixth Circuit, *Consumer Credit Ins. Agency, Inc. v. U.S.*, 599 F.2d 770, 774 (6th Cir. 1979), Second Circuit, *Statler Towers, supra*, 787 F.2d at 798; *Standard Drywall Inc. v. U.S.*, 668 F.2d 156, 157 n.2 (2d Cir. 1982), Ninth Circuit, *Offices of Lakeside Non-Ferrous Metals, Inc. v. U.S.*, 679 F.2d 778, 780 (9th Cir.1982), and Tenth Circuit, *Matter of Search of Premises Known as 6455 South Yosemite, Englewood*, 897 F.2d 1549, 1557 (10th Cir. 1990), have ruled on, without disturbing, district court orders requiring the government to provide

6

copies of seized business records. Certainly the government has not cited, and my own research has not found, any case in which a court has held that the government can withhold copies of business records, even though its right to retain the originals remains clear, or, as in this case [so far], unquestioned.

I conclude, accordingly, that I have authority to grant the motion to vacate the protective order and compel the government to produce copies of all the documentary materials, in whatever form or format seized.[9]

That I should do so is clear on consideration of the constitutional consequences of the government's refusal to provide copies or allow KindHearts' representatives to inspect them without having to do so in the company of counsel.

First, and of gravest concern under the circumstances of this case, is the impact on KindHearts present due process and potential Sixth Amendment rights to enjoy fair and adequate representation by counsel.[10]

---

[9] In the typical case involving production of copies of seized business records courts impose the cost of copying on the owner, rather than the government. *See, e.g., Statler Towers, supra*, 787 F.2d at 798. But that's where the movant has "not demonstrated any unusual circumstances which might require that an exception be made to this principle." *Id*.

This is not a typical case, and its unusual circumstances justify making the government pay for the costs of producing the copies. As a result of the OFAC freeze of KindHearts' assets, it presumably is without the wherewithal to pay for copying. Whether, when and if the assets become unfrozen in whole or part, the government can or should offset copying costs before returning monies to KindHearts is a question for another day.

[10] The government does not contend that its actions do not potentially have constitutional implications with regard to the right to counsel in administrative, civil and criminal proceedings. The government's position is, rather, that the present protective order does enough, if not more than enough to protect such right.

A paramount impediment to enjoyment of those rights is that counsel does not have copies of all the materials; indeed, because they have access only to copies of seized papers, but not electronically stored data and information, it is highly likely that they have but a fraction of the overall total of their clients' communications. Given the government's underlying contention that KindHearts was a money funnel for overseas terrorists, its records of its electronic communications are of especial importance and potential pertinence.

As importantly, the restrictions on access to the materials imposed on KindHearts make meaningful consultation nearly impossible. This is far more than the "logistical inconvenience" that the government dismissively perceives in its opposition to the pending motion. [Doc. 35, at 5]. Telling someone he or she can look at a modest pile of papers only in the company of counsel is inconvenient. Telling Kindhearts it can look at what was contained in 150 boxes only in the company of an attorney makes meaningful review impossible. Without meaningful review, no client can tell a lawyer what's there and what it may mean, much less obtain informed advice and counsel from the attorney.[11]

That is the most serious consequence of the current protective order: there is simply no way, if the order remains in place, that KindHearts can talk to its attorneys about what it was doing, or for its lawyers to assess whether what was being done ran afoul of the law and advise KindHearts accordingly.

In view of the government's representation that its criminal investigation is "ongoing," the order's interference with the ability of KindHearts to consult with its attorneys is especially

---

[11] It also would entail, given the volume of materials, a massive waste of counsel's time.

troublesome. Providing material support to overseas terrorists is a serious crime, and conviction for that crime carries severe penalties. *See* 18 U.S.C. § 2339a.

Even if the criminal investigation ends without indictment, the stakes are high for KindHearts, whose assets have been frozen for three years without further action by OFAC. That office has on occasion during the pendency of this case, suggested that it could proceed without further ado with the "special terrorist organization" designation. That, too, has potentially serious consequences. *See* 31 C.F.R. § 594.701. If counsel is to play a meaningful role in opposing and seeking to avoid such designation, and otherwise to protect KindHearts in the face of OFAC's past and potential future actions, they must be able to consult with informed representatives of KindHearts. As long as the current order is in place, they cannot do so.[12]

On this basis – impairment of the right to counsel – alone, the protective order is unwarranted and cannot be continued. While, as Kindhearts' counsel argue, adverse First Amendment consequences result from their client's inability to have access to copies of their materials, and, as well, their residual ownership interests are adversely affected, those consequences are of lesser importance. What presently matters is that the current version of the protective order imposes unjustified burdens on the ability of KindHearts to be represented fairly and effectively.

This is particularly so in view of the fact that the government's actions against KindHearts have all been *ex parte* and untested in the crucible of adversary proceedings. For what the government has done and may do to be tested adequately, counsel and client both need to have adequate access to the copies of all the materials taken during the searches nearly three years ago.

---

[12] Indeed, as presently written, the order appears to prevent use by counsel of any documents to which they have access even in their suit against the government.

While I reject the government's contentions as presently framed and presented, I acknowledge that there might be some circumstances in which access to and dissemination of some portion of the materials might potentially be adverse to the interests of the United States.[13] Thus, notwithstanding the patent insufficiency of the government's rationales, as advanced so far, for nonproduction of copies, it shall have leave to request reasonable, specific and individualized restrictions, based on *specific and substantial* consequences, on access to and dissemination of the materials to be copied and delivered under this order.

To facilitate prompt disclosure of all seized materials to counsel for KindHearts and its representatives, counsel shall designate those KindHearts representatives who they desire to have initial access to the copies being provided hereunder. If the government has specific, individualized and substantial concerns about access by any so designated individual, it shall have leave to object promptly to access by or dissemination to such individual.[14]

With regard to any request to limit access to or dissemination of the materials covered by this order, the government has the burden of showing *bona fide*, specific and substantial need for any such proposed limitation. It also has the burden of establishing that any such limitation does not improperly or unduly impair the right to counsel. KindHearts shall, of course, have the right to oppose any proposed restrictions, and otherwise to be heard before any restrictive order is entered.

---

[13] I can anticipate and understand, for example, that the government would not want Kahled Smali, now resident in Lebanon, to have access to the materials.

[14] For example, limitation of access by or dissemination to representative of KindHearts not resident in the United States would appear appropriate, at least initially. Any such restriction should not apply to Professor Cole.

In my work on this opinion, I have reviewed the affidavit for the search warrant, which remains sealed. If counsel wish to move to have the affidavit unsealed, they have leave to do so. The government may then respond to such motion, if it wishes to do so. Likewise with regard to other materials sealed in this case.

If the government wishes to limit access to or dissemination of the materials to be made available in accordance with this order, it shall so inform KindHearts' counsel promptly.

Prior to the status/scheduling conference being set herein, the parties shall attempt in good faith to reach agreement as to any such restrictions; if agreement cannot be reached, they shall include in the status reports/agendas being ordered herein copies of their counter-proposals and statements in support thereof. Those reports/agendas shall also set forth the government's anticipated timetable for completing production as required by this order, and such other matters as the parties want addressed/resolved at the status/scheduling conference being set herein.

## Conclusion

The government has shown no adequate grounds for refusing to provide copies to KindHearts and its counsel of the materials seized by its agents. Its "ongoing investigation" cannot be impaired, as it will have the originals; it has not supported its concerns about influencing of testimony or intimidation of witnesses with any reason – aside from its own conclusory assumptions – that such would occur. The government's unsupported, generalized – indeed, boilerplate – assumptions are not an adequate basis to tolerate, as the current protective order does, substantial interference with and impairment of the ability of client and counsel to communicate and consult meaningfully about the government's past, present and future actions against KindHearts.

It is, therefore,

11

ORDERED THAT:

1. The motion to vacate, or, in the alternative, to modify amended protective order [Doc. 25] be, and the same hereby is granted;

2. The government shall forthwith commence producing copies at its expense of all seized materials to counsel of record for KindHearts, and as well, as provided herein, to such representatives of KindHearts as counsel shall designate; and

3. A telephonic status/scheduling conference shall be held in this case and Case No. 3:08CV2400, on February 9, 2009, at 4:30 p.m. before the undersigned; prior to said conference the parties shall file status reports/agendas on February 6, 2009.

So ordered.

/s/ James G. Carr
Chief Judge